{¶ 1} This appeal arises out of a divorce granted to William B. Ketchum ("Appellant") and Judith A. Ketchum ("Appellee"). Appellant raises four assignments of error, three of which are without merit. The record reveals, however, that the trial court divided the marital assets unequally without providing a sufficiently clear basis for the division in order for an appellate court to undertake a meaningful review. Thus, the matter is hereby remanded for a redivision of marital assets.
 {¶ 2} Appellant and Appellee were married on September 5, 1987. They had one daughter, Samantha, d.o.b. 9/12/96.
 {¶ 3} On November 17, 2000, Appellee filed for divorce in the Columbiana County Court of Common Pleas.
 {¶ 4} On August 29, 2001, Appellant filed a proposed Shared Parenting Plan.
 {¶ 5} The final divorce hearing was held on October 4, 2001. The parties stipulated to the valuations of most of the marital property. The parties also stipulated to the allocation of some of the marital assets. They did not stipulate which party would receive the marital home.
 {¶ 6} The court filed its divorce judgment entry on November 16, 2001. The court denied Appellant's request for shared parenting. Appellee was named the residential parent and Appellant was ordered to pay child support. The court did not summarize its allocation of marital assets, but it appears that Appellant was awarded $32,307.39 in assets and Appellee was awarded $63,965.33, as follows:
William — Appellant
Ford F350 Truck $10,240.00 Chaparral boat -6,017.50 S.R. 7 real estate 112,500.00 mortgage -32,807.64 lease obligation -29,500.00 tanker trailer 4,000.00 1990 tractor 3,000.00 Sky Bank loan -15,652.00 lien -13,455.47
$32,307.39
Judith — Appellee
1997 GMC truck $6,235.50 Berkshire Rd. property 84,000.00 mortgage -45,511.27 Hartford account 2,737.19 American United account 3,219.95 nurse pension 13,283.96
$63,965.33
The difference between the two amounts is $31,657.94. Using these totals, Appellant was awarded 33.6% of the total marital assets and Appellee was awarded 66.4%. The court also considered but rejected a $10,000 debt that Appellant attempted to establish as a marital debt.
 {¶ 7} This timely appeal was filed on November 30, 2001.
 {¶ 8} Appellant's first assignment of error argues:
 {¶ 9} "The Trial Court Committed An Error Of Law And Abused Its Discretion In Denying Father's Request For Shared Parenting And Finding That Sole Custody Of The Parties' Daughter Was To Be Allocated To Mother, Which Was Clearly Not In The Child's Best Interest In Light Of The Evidence Presented At Trial."
 {¶ 10} Appellant submitted a shared parenting plan to the court prior to the final divorce hearing. Appellant believes that the court should have adopted the plan. Appellant argues that a court must consider the factors in R.C. 3109.04(F)(2) in order to implement a shared parenting plan. R.C. 3109.04(F)(2) states:
 {¶ 11} "(2) In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23
of the Revised Code, and all of the following factors:
 {¶ 12} "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 {¶ 13} "(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 {¶ 14} "(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
 {¶ 15} "(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 {¶ 16} "(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem. (Emphasis added.)
 {¶ 17} Appellant contends that the court rejected the shared parenting plan based solely on factor (a), namely, that he could not cooperate with Appellee in a shared parenting plan. Appellant concludes that the evidence does not support the trial court's decision.
 {¶ 18} The standard of review of a child custody decision is not in dispute here. A child custody decision that is supported by competent and credible evidence will not be reversed on appeal absent an abuse of discretion. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus; Rohrbaugh v. Rohrbaugh (2000), 136 Ohio App.3d 599, 603,737 N.E.2d 551. A trial court has broad discretionary powers in child custody proceedings. Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124,661 N.E.2d 1008. This discretion should be accorded the utmost respect by a reviewing court in light of the gravity of the proceedings and the impact that a custody determination has on the parties involved. Trickeyv. Trickey (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772. An abuse of discretion connotes an attitude on the part of the court that is arbitrary, unreasonable or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 19} Appellant cites In re Marriage of Shore (1999),135 Ohio App.3d 374, to support the position that a father's testimony that he and his former wife cannot cooperate is not enough to defeat a request for shared parenting. Appellant misinterprets Shore. In Shore,
the trial court was asked to modify a shared parenting agreement. Although the father testified that the parties could not cooperate, the court apparently did not believe the testimony and retained the shared parenting agreement rather than terminating it. The Eighth District Court of Appeals upheld the decision, finding no abuse of discretion on the part of the trial court and finding some competent and credible evidence supporting that the former husband and wife could cooperate.
 {¶ 20} Shore merely stands for the oft-repeated proposition that a trial court decision regarding a shared parenting agreement will be upheld absent an abuse of discretion by the trial court.
 {¶ 21} In the matter before us, there is evidence in the record that Appellant could not cooperate with Appellee. Sonia Stocker, the guardian ad litem, testified that the hostility and anger between Appellant and Appellee would make shared parenting an unreasonable option and would not be in the child's best interest. (Tr., pp. 24-25.) Appellee testified about fighting and threats made by Appellant, about his extreme anger during their marriage, and that she filed for a protection order during the pendency of the divorce proceedings. (Tr., pp. 73, 76-78.) She testified that Appellant pushed her through a mirror, that he punched a hole through Samantha's nursery door, and that he hit things when he was mad. (Tr., p. 78.) Appellee testified that Appellant "threatened my life" and that she was "scared to death" of him. (Tr., pp. 136-137.)
 {¶ 22} It is clear from the record that the trial court believed this evidence and concluded that the parties could not cooperate. It follows, according to Shore and a myriad of other case holdings, that the judgment of the trial court in the instant case should be upheld. Although there is other testimony, primarily from Appellant himself, that might tend to indicate that the parties could cooperate, the trial court was free to believe the contrary evidence and free to reject Appellant's testimony. Domigan v. Gillette (1984), 17 Ohio App.3d 228, 229, 17 OBR 494, 479 N.E.2d 291. The trier of fact is in the best position to weigh evidence and to assess the credibility of witnesses. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273.
 {¶ 23} Appellant also appears to argue that the trial court should have made explicit findings concerning the other best interest factors listed in R.C. § 3109.04(F) before rejecting the shared parenting plan. "This Court has generally relied on the presumption of correctness that adheres to a trial court's decision, and has accepted that the trial court considered the relevant [best interest] factors unless the record clearly shows otherwise." In re Jeffreys (Feb. 20, 2002), 7th Dist. No. 01-BA-4. It is obvious that the trial court accepted the parties' inability to cooperate as the overriding factor in rejecting the shared parenting agreement. Any further discussion of other best interest factors would have been superfluous.
 {¶ 24} Appellant's first assignment of error is overruled.
 {¶ 25} Appellant's second assignment of error asserts:
 {¶ 26} "THE TRIAL COURT COMMITED AN ERROR OF LAW AND ABUSED ITS DISCRETION IN ITS INEQUITABLE DISTRIBUTION OF THE PARTIES' MARITAL ESTATE WHICH RESULTED IN AN AWARD OF NET ASSETS TO WIFE OF ALMOST THREE TIMES THE VALUE OF THE NET ASSETS AWARDED TO HUSBAND."
 {¶ 27} Appellant correctly argues that a division of marital property should be equal unless the court determines that an unequal division would be more equitable. R.C. § 3105.171(C) states:
 {¶ 28} "(C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
 {¶ 29} "(2) Each spouse shall be considered to have contributed equally to the production and acquisition of marital property."
 {¶ 30} Appellant contends that the division of the marital property was grossly unequal and that the court did not justify how the unequal division could be considered equitable. From our calculations, it appears that the court awarded Appellant $32,307.39 and awarded Appellee $63,965.33. Appellant deducts an additional $10,000 from his award based on a debt to Mabel Ketchum, but it is clear from the record that the court did not consider this to be a marital debt. (11/19/01 Opinion, p. 6.) Even without the additional $10,000 deduction, there is a $31,000 disparity in the division of marital assets.
 {¶ 31} Appellant correctly reviews the legal standards applicable to the division of marital assets. The trial court must consider the factors listed in R.C. § 3105.171(F) in determining how to divide the marital assets. The court must also make written findings of fact that support its division of marital assets. R.C. § 3105.171(G). "In allocating property between the parties to a divorce * * * the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Kaechele v. Kaechele (1988),35 Ohio St.3d 93, 518 N.E.2d 1197, paragraph two of the syllabus.
 {¶ 32} Appellant points out that the only reason given by the court in making an unequal division of the marital assets was:
 {¶ 33} "[T]he substantial income potential of the business which includes both the trucking and storage rental enterprises. It is the Court's opinion that any differential in the division of property in favor of the Wife will be more than compensated by the substantial income potential of the business which is hereby being awarded to the Husband."
 {¶ 34} The potential income of a marital asset is a not listed as a specific factor for the court to consider in dividing the marital assets. R.C. § 3105.171(F).
 {¶ 35} The trial court's and Appellee's comments about Appellant's future income would be relevant to a discussion about spousal support. The relative earning abilities of the parties is specifically listed as a factor in determining spousal support in R.C. 3105.18(C)(1)(b). SeeFernback v. Fernback (Dec. 14, 2001), 7th Dist. No. 00-C.A.-276; R.C.3105.18(C)(1)(a). The parties in this case, though, stipulated that there would be no spousal support. (Tr., p. 14.)
 {¶ 36} The income that a marital asset produces could be a factor in valuing the marital asset, depending on what valuation method the court uses. For example, under the capitalization of earnings method of valuing a business, an expert takes the historical earnings of a business and applies a "discount rate" or "capitalization rate" that corresponds to that business. 1 Fishman, Pratt, Griffith, Wilson, Guide to Business Valuations (2 Ed. 1992) 5-1, Section 500.02. The result is an overall value of the business.
 {¶ 37} There is no indication in the record that anyone attempted to value Appellant's trucking and storage business. There is no evidence of the income potential of that business. No trucking or storage business is listed as a marital asset. It appears that the court decided, sua sponte, that Appellant's trucking and storage business was worth $31,657.94 (that being the difference between the assets awarded to Appellee and the assets awarded to Appellant). There is nothing in the record to support the court's apparent valuation of the Appellant's trucking and storage business, because no one ever presented any evidence about the value of the business.
 {¶ 38} Appellee argues that there was evidence presented about the value of the trucking and storage business, although it was presented obliquely. Appellee points to Appellant's testimony that, "my income's in half of what it used to be," because he voluntarily chose to spend time with his daughter rather than work. (Tr., p. 269.) Appellee then leaps to the conclusion that Appellant's trucking and storage business had substantial value. Appellant's comment about his reduced income may have a tangential connection to the value of the trucking business, but the parties did not attempt to establish what that tangential link might have been. The only real evidence specifically related to the trucking and storage business indicates that it was not making money and that Appellant did not intend for the business to make a profit. (Tr., p. 89-90.)
 {¶ 39} The parties did not attempt to treat Appellant's trucking business as a marital asset. The court presents no theory for imposing an arbitrary value on it, particularly since neither party presented evidence of its value or a theory of how to value the business. For these reasons, Appellant's second assignment of error has merit and the case must be remanded for a valuation of the trucking business and, thus, a redivision of the marital assets.
 {¶ 40} Appellant's third assignment of error argues:
 {¶ 41} "Given The Evidence Presented At Trial, It Was An Error Of Law And An Abuse Of The Trial Court's Discretion To Fail To Find A Debt Owed To Husband's Mother To Be Marital Debt And A Joint Responsibility Of The Parties."
 {¶ 42} Appellant argues that a $10,000 debt owed to his mother should have been treated as marital debt rather than as his own personal and separate debt. The claim supposedly arose when Appellant purchased a house owned by his mother, Mabel Ketchum, located at 49795 Berkshire Road, East Liverpool, Ohio. (Tr., p. 303.) Mabel Ketchum testified that she wanted $50,000 for the house but only received $40,000 from Appellant. (Tr., p. 305.) She claimed that there was no specific time for repayment of the additional $10,000, and she could be repaid, "whenever they came up with it." (Tr., p. 305.) There was additional evidence consisting of a document signed by Appellant and his mother which contained the same information as in Mrs. Ketchum's testimony.
 {¶ 43} R.C. § 3105.171(F) states:
 {¶ 44} "(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 45} "* * *
 {¶ 46} "(2) The assets and liabilities of the spouses;" (Emphasis added.)
 {¶ 47} Although R.C. 3105.171 requires the trial court to take marital liabilities, i.e., marital debts, into account when the court divides the marital property, the statute does not define marital debt. No accepted definition of marital debt has arisen from Ohio caselaw. In most states, a marital debt is any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose. Turner, Equitable Distribution of Property (2 Ed. 1994, Supp. 2002) 455, Section 6.29.
 {¶ 48} The first step in dividing the parties' marital debts is to determine whether a debt actually exists or not. This is primarily a question of fact to be determined by the trier of fact. Gustafson v.Buckley (1953), 96 Ohio App. 115, 119, 121 N.E.2d 280.
 {¶ 49} Appellant misconstrues the trial court's holding with respect to this alleged debt. The trial court did not allocate the debt to Appellant. On the contrary, the trial court did not believe that there was a $10,000 debt: "[t]he court cannot find from the evidence that the said sum is due and therefore denies the said claims of the Defendant with regard thereto." (11/16/01 J.E., p. 6.) The court did not designate the debt as marital debt because the court concluded there was no debt. Although Appellant provided alternative evidence to support his view that there was a legitimate debt, the trial court was in a better position than we are to determine the credibility of the evidence. The trial court's credibility determinations are treated with great deference on appeal. Seasons Coal Co., supra, 10 Ohio St.3d at 80, 461 N.E.2d 1273. Appellant's third assignment of error is therefore overruled.
 {¶ 50} Appellant's fourth assignment of error asserts:
 {¶ 51} "The Trial Court's Decision To Award Wife The Parties' Marital Residence Which Had Been In Husband's Familiy For Over 35 Years Was Contrary To Law And An Abuse Of The Trial Court's Discretion, Especially In Light Of The Unequal Distribution Of Assets Between The Parties."
 {¶ 52} The parties did not stipulate as to who would receive the marital residence. Appellant argues that he should have received the marital residence because it had been owned by members of his family for 35 — 40 years. Appellant cites no authority that would have forced or guided the trial court into awarding the marital residence to him simply because it had been in his family for some years.
 {¶ 53} When reviewing the trial court's marital property division, the reviewing court is limited to determining whether, considering the totality of the circumstances, the trial court abused its discretion in fashioning the award. Focke v. Focke (1992),83 Ohio App.3d 552, 555, 615 N.E.2d 327. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore, 5 Ohio St.3d at 219, 5 OBR 481, 450 N.E.2d 1140. Moreover, a reviewing court should not review discrete aspects of the property division out of the context of the entire award, but should consider the distribution within the context of the entire award. Jamesv. James (1995), 101 Ohio App.3d 668, 680, 656 N.E.2d 399.
 {¶ 54} The court is required to consider the factors listed in R.C. § 3105.171(F) before dividing the marital property. Two factors are relevant to this assignment of error:
 {¶ 55} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 56} "* * *
 {¶ 57} "(9) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 58} The court awarded custody of Samantha to Appellee, and therefore, R.C. § 3105.171(F)(3) weighs in favor of awarding the marital home to Appellee. The catch-all provision in R.C. §3105.171(F)(9) allowed the trial court to take other factors into account, including Appellant's emotional attachment to the marital residence. The trial court apparently concluded that more factors weighed in favor of awarding the marital residence to Appellee. On this basis, we overrule Appellant's fourth assignment of error.
 {¶ 59} Appellant's first, third and fourth assignments of error are, thus, overruled. Appellant's second assignment of error is sustained on two grounds: 1) the trial court designated a business as marital property and gave that business a value without any evidence, even though the parties did not present evidence of the value of the business; and 2) the trial court appears to have made a substantially unequal division of the marital assets without explaining the basis of that unequal division. We reverse the trial court's decision as to the value of Appellant's trucking business. We also reverse the trial court's decision as to the division of marital property because it lacks adequate explanation. We affirm all other valuations made by the trial court and there is no need for the trial court to review or reestablish those valuations on remand. The trial court will need to revalue the trucking business, if indeed it has any value. After establishing that value, the trial court must revisit the division of marital assets. If the court decides to divide the assets unequally but equitably, it should render its opinion with enough precision to allow for review of the decision.
Donofrio and DeGenaro, JJ., concur.